Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ÁNGEL L. FONTÁNEZ ORTIZ<br><br>Recurrente<br><br>Vs.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | TA2026RA00227 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Corrección y Rehabilitación<br><br>Remedio Núm. GMA500-107-26 |

Panel integrado por su presidente, el Juez Monge Gómez, el Juez Cruz Hiraldo y el Juez Sánchez Báez[1]

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de junio de 2026.

El 4 de mayo del año en curso la parte recurrente, el señor Ángel L. Fontánez Ruiz, compareció ante este Tribunal de Apelaciones por derecho propio y como indigente. Solicita nuestra intervención con la *Respuesta al miembro de la población correccional* emitida el 26 de marzo de 2026, entregada al recurrente el 31 de marzo de 2026 por la parte recurrida, la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación.

Estudiado el legajo apelativo y en consideración al *Derecho* aplicable, *confirmamos* la determinación recurrida.

*-I-*

El 17 de febrero de 2026 el recurrente presentó en su institución correccional una solicitud de remedio administrativo (GMA500-107-26) atendida al amparo del *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los*

---

[1] Mediante la OATA-2026-063 emitida el 2 de junio de 2026, se designa al Hon. José J. Monge Gómez en sustitución de la Hon. Ivelisse M. Domínguez Irizarry.

*Miembros de la Población Correccional,* Reglamento Núm. 8583 de 4 de mayo de 2015. La parte recurrente solicitó la corrección de su hoja de liquidación de sentencia. Adujo como motivo para la corrección la incorrecta aplicación a las penas que cumple del Art. 308 del Código Penal, 33 LPRA sec. 5416.[2] Según el recurrente el error estriba en que la aplicación del referido artículo efectuada por la agencia a sus sentencias tuvo el resultado práctico de obligarle a cumplir nuevamente la pena que cumplió por violar alguna disposición o disposiciones no especificadas en la "Ley de Armas". La parte recurrente asevera haber cumplido con la pena impuesta al amparo del citado estatuto.

El 26 de marzo de 2026 una evaluadora de la parte recurrida emitió *Respuesta* a la cual anejó la respuesta del área concernida. La respuesta del área concernida fue escrita a mano por una "Supervisora del Récord Penal" y lee:

> Sr. Fontánez Ortiz:
>
> La Ley 85 establece que deberá cumplir la Sentencia mayor en 1er lugar para cumplir el mínimo y pueda ser evaluado por la Junta de Libertad Bajo Palabra. El tiempo desde su ingreso le fue adjudicado a su sentencia mayor en su caso por la (ilegible) 89 con pena de 11 años y 6 meses.

Inconforme con la respuesta, el 9 de abril de 2026 el recurrente presentó reconsideración. El 16 de abril de 2026, notificada el 22 de abril de 2026, la parte recurrida emitió una *Respuesta en Reconsideración* mediante la cual confirmó la *Respuesta* emitida. Todavía insatisfecho la parte recurrente comparece ante este tribunal para cuestionar la *Respuesta* emitida. Insiste en la aplicación errónea del Art. 308 del Código Penal, *supra,* a su hoja de liquidación de sentencia. El Procurador General también comparece mediante alegato escrito. Argumenta a

---

[2] El artículo establece los términos para cualificar para consideración de la Junta de Libertad bajo Palabra.

favor de la corrección legal de la respuesta recurrida esto sobre la base de la presunción de corrección que cobija la determinación administrativa. También aduce que la parte recurrente no situó a este tribunal en posición de revisar la respuesta porque no incluyó como anejo en el apéndice la hoja de liquidación de su sentencia. Por ello concluye, "[a]sí pues, el recurrente impide que Honorable Foro pueda evaluar si su Hoja de Liquidación en efecto contiene un error o no, y por ende poder revisar la respuesta de la DRA". Debido a estas razones nos invita a confirmar la respuesta recurrida pues según expone:

> [L]a respuesta emitida fue correcta en la medida en que esta indicó que, luego de evaluar la totalidad del expediente, determinó que el tiempo desde su ingreso había sido adjudicado de forma correcta en la Hoja de Liquidación. Así las cosas, la determinación fue responsiva ya que la DRA completó a cabalidad la autoridad que le confieren la reglamentación aplicable.

Procedemos a resolver el presente recurso con el beneficio de la comparecencia de las partes, el contenido del expediente administrativo y el *Derecho* aplicable.

## -II-

### -A-

El Artículo VI, Sección 19, de la Constitución del Estado Libre Asociado de Puerto Rico, establece como política pública el deber del Estado de reglamentar las instituciones penales, para que estas sirvan a sus propósitos y conduzcan a la rehabilitación moral y social de las personas confinadas en ellas. Con tal propósito, el Departamento de Corrección y Rehabilitación aprobó el *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional*, Reglamento Núm. 8583 de 4 de mayo de 2015,[3] fue

---

[3] La División de Remedios Administrativos fue creada como resultado de la estipulación estatal *Ramón A. Martínez Torres y otros vs. Rafael Hernández*

adoptado para atender cualquier queja o agravio que pudieran tener los confinados en contra del Departamento de Corrección y Rehabilitación o sus funcionarios sobre cualquier asunto, entre ellos, agresiones físicas, verbales y sexuales, propiedad de confinados, revisiones periódicas a la clasificación, traslados de emergencia, reclusión en el anexo de máxima seguridad, reclusión solitaria, plan de recreación, ejercicios y uso de biblioteca para fines recreativos, servicios médicos y servicios religiosos. Pero, específicamente, la División de Remedios Administrativos se crea con el objetivo de que los confinados puedan presentar una "solicitud de remedio" en su lugar de origen, excepto que medie justa causa para no haberla radicado en su lugar de origen, sobre: actos e incidentes que afecten personalmente al confinado en su bienestar físico, mental, seguridad personal o en su plan institucional; minimizar las diferencias entre los confinados y el personal, para evitar o reducir la radicación de pleitos en los Tribunales; plantear asuntos de confinamientos al Departamento; reducir tensiones y agresiones físicas y verbales que puedan resultar en reclamos no atendidos; recopilar información relacionada a los reclamos de los confinados que permitan evaluar éste y otros programas y facilitar el proceso de rehabilitación del confinado. Reglamento 8583, Introducción.

El Reglamento establece detalladamente el procedimiento que debe seguir el miembro de la población correccional para solicitar un remedio a la División de Remedios Administrativos,

---

*Colón - Injunction* (Pleito de Clase), PE86-1787; PE86-1911; PE86-1925; PE86-1927; PE86-1950; PE86-1397; PE81-1074; PE87-8; PE87-84 y PE87-135, los acuerdos de transacción caso *Morales Feliciano v. García Padilla*, USDC-PR Civil Núm. 79-4 (PJB), como parte de "*Prison Rape Elimination ACT*" (PREA). También deriva de la Ley Pública Núm. 96-2476-(H.R.-10) "*Civil Rights of Institutionalized Person Act*", aprobada por el Congreso de los Estados Unidos de América el 23 de mayo de 1980, 42 USC 1997 *et seq.*. Esta ley "provee para la creación y desarrollo de un organismo administrativo que promueva que cada institución correccional resuelva efectivamente los reclamos de la población correccional." Además, tendrá la facultad de velar por el cumplimiento de los deberes y obligaciones creadas por leyes y reglamentos que aplican al Departamento de Corrección y Rehabilitación." Véase párrafo introductorio del Reglamento.

creada para dar ese servicio institucional. Dispone, en lo pertinente a este recurso, lo siguiente:

REGLA XII - PROCEDIMIENTO PARA LA RADICACIÓN DE SOLICITUDES

1. Para iniciar la Solicitud de Remedios Administrativos el miembro de la población correccional deberá completar el Formulario de Solicitud establecido para ello, el cual será provisto por la División.

[...]

REGLA XIII - PROCEDIMIENTO PARA EMITIR RESPUESTAS

1. El Evaluador utilizará todos los procedimientos que estime necesarios para la obtención de la información requerida para brindar una respuesta adecuada al miembro de la población correccional. En aquellos casos en que el Evaluador a cargo de emitir respuesta necesite información contenida en algunos de los expedientes del miembro de la población correccional (social, criminal o médico) o cualquier otro expediente o documentos oficiales, podrá solicitar una certificación o interpretación del expediente sobre la información requerida.

[...]

4. Una vez el Evaluador recibe la información requerida, contestará y entregará por escrito la respuesta al miembro de la población correccional dentro del término de veinte (20) días laborables. ...

[...]

REGLA XIV- REVISIÓN DE RESPUESTA DE RECONSIDERACIÓN DE REMEDIOS ADMINISTRATIVOS

1. Si el miembro de la población correccional no estuviere de acuerdo con la respuesta emitida, podrá solicitar la revisión, mediante escrito de Reconsideración ante el Coordinador, dentro del término de veinte (20) días calendarios, contados a partir del recibo de la notificación de la respuesta.

2. En dicha solicitud será responsabilidad del miembro de la población correccional mencionar el número de la solicitud de

remedio que está reconsiderando y no podrá incluir nuevos planteamientos que no fueron incluidos en la solicitud original.

3. El Evaluador deberá remitir inmediatamente al Coordinador la solicitud de reconsideración con el expediente del caso para la evaluación correspondiente.

4. El Coordinador una vez recibida la Solicitud de Reconsideración por parte del Evaluador, tendrá quince (15) días para emitir una respuesta al miembro de la población correccional si acoge o no su solicitud de reconsideración.

[…]

REGLA XV - REVISIÓN JUDICIAL ANTE EL TRIBUNAL DE APELACIONES

1. El miembro de la población correccional podrá solicitar revisión ante el Tribunal de Apelaciones, dentro del término de treinta (30) días calendarios, contados a partir de la fecha del archivo en autos de la copia de la Notificación de la Resolución de Reconsideración, emitida por el Coordinador de Remedios Administrativos o noventa (90) días a partir de la radicación de la Solicitud de Reconsideración acogida, si la Agencia no actúa conforme a la misma.

[…]

### -B-

La competencia de este Tribunal de Apelaciones para revisar las actuaciones administrativas está contemplada en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley 38-2017, 3 LPRA Sec. 9601, *et seq.* A tales efectos, la Sección 4.1 de la LPAU dispone sobre la revisión judicial aplicable a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias, las que serán revisadas por el Tribunal de Apelaciones mediante Recurso de Revisión. 3 LPRA Sec. 9671. Sobre el alcance de esta revisión, la Sección 4.5 de la LPAU establece que las determinaciones de hechos de las agencias serán sostenidas por el tribunal, si se basan en evidencia

sustancial que obra en el expediente, mientras que las conclusiones de derecho serán revisables en todos sus aspectos. 3 LPRA Sec. 9675.

En nuestro ordenamiento jurídico ha sido la norma general por años que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y que su revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente. Ahora bien, recientemente nuestro Tribunal Supremo, en consideración del lenguaje específico de la Sección 4.5 de la LPAU, adoptó la normativa establecida en *Loper Bright Enterprises v. Raimondo*, 603 US 369 (2024). Así pues, concluyó que la interpretación de las leyes es una tarea inherente de los tribunales. En virtud de ello, enunció que, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos y no guiarse por la deferencia automática que se aplica a estas decisiones. *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR _____ (2025).

En el citado caso el Tribunal Supremo de Puerto Rico expresó que:

> [A]l ejercitar dicho criterio, los tribunales pueden apoyarse, como lo han hecho desde el inicio, en las interpretaciones de las agencias. ... Sin embargo, tales interpretaciones constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía de conformidad con la APA; y no avalar ciegamente, como se solía hacer en el pasado. *Íd.* (cita depurada).

En ese sentido, nuestro más alto foro enfatizó que "los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. Pero principalmente, contrario a la práctica de las pasadas décadas, los tribunales no tienen que darle deferencia a la

interpretación de derecho que haga una agencia simplemente porque la ley es ambigua". *Íd.* No obstante, es importante destacar que en el citado caso nuestro más alto foro no modificó la evaluación y respetó las determinaciones de hechos alcanzadas por las agencias. Así pues, prevalece todavía la norma de que, para impugnar la razonabilidad de la determinación administrativa, es necesario que la parte recurrente señale la prueba en el récord que reduzca o menoscabe el peso de la evidencia que obra en el expediente administrativo. *Domínguez v. Caguas Expressway Motors*, 148 DPR 387, 397-398 (1999). La misma debe ser suficiente como para que pueda descartarse en derecho la presunción de corrección de la determinación administrativa, no pudiendo descansar en meras alegaciones. *Com. Vec. Pro-Mej., Inc. v. JP*, 147 DPR 750, 761 (1999). El criterio rector para examinar una decisión administrativa es la razonabilidad de la actuación de la agencia recurrida. *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013).

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712 (2012); *Empresas Ferrer v. A.R.PE.*, 172 DPR 254, 264 (2007).

-***III***-

El Reglamento Núm. 8583 creó la División de Remedios Administrativos para establecer un ente gubernamental administrativo con la facultad de atender cualquier queja o agravio presentado por un confinado. De ahí que estos últimos pueden

presentar solicitud de remedios, referentes a actos que les afecten personalmente en su bienestar físico, mental, seguridad personal o plan institucional. De igual forma, dispone el citado reglamento, que el evaluador brindará una respuesta adecuada a la solicitud del miembro de la población correccional. De tal nomenclatura, respuesta adecuada, nos queda claro que el cumplimiento con el reglamento comporta necesariamente una contestación que atienda con precisión el asunto que se plantea. Es decir, la respuesta adecuada a la que alude la reglamentación no supone, en modo alguno, necesariamente se conceda el remedio solicitado por el confinado, pero sí una contestación precisa a la solicitud de respuesta.

Hemos analizado la respuesta dada en este caso y nos parece adecuada, ante la situación particular que presenta la parte recurrente. La solicitud de remedio que un miembro de la población correccional presente a la División de Remedios Administrativos no necesariamente redundará en la concesión del reclamo solicitado. Lo que es exigido de las autoridades correccionales por nuestro ordenamiento es que atiendan la solicitud y provean al confinado una "respuesta adecuada", según la naturaleza de lo solicitado. Por eso se requiere del evaluador que utilice "todos los procedimientos que estime necesarios para la obtención de la información requerida para brindar una respuesta adecuada al miembro de la población correccional". Entonces, una "respuesta adecuada" será una respuesta informada, es decir, que provea al solicitante de los medios necesarios para lograr lo que pide o le ponga en condiciones de conocer el estado de su reclamo.

Destacamos que la parte recurrida no puede proveer remedios fuera del alcance de la ley. Sí puede, como ocurrió en este caso, hacer viable el remedio solicitado por el miembro de la población correccional mediante referidos a las áreas concernidas.

Eso es lo que han hecho las autoridades en este caso: referir la solicitud de respuesta al área concernida y con competencia para atender el reclamo de la parte recurrente. El personal del área concernida verificó la hoja de liquidación de sentencia de la parte recurrente, y concluyó que los cálculos allí incluidos están conforme a derecho. La petición de la parte recurrente fue atendida de manera específica en cuanto a verificar la corrección de la hoja de liquidación de sentencia de la parte recurrente. Por tanto, la parte recurrida atendió con precisión el asunto presentado por la parte recurrente y este quedó adecuadamente informado del resultado.

En una revisión judicial "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Sección 4.5 de la Ley Núm. 38-2017, LPAU, 3 LPRA sec. 9675. Empero, la parte recurrente solo concluye error sobre la respuesta recibida sin otro fundamento que su propia convicción sobre el asunto. La Ley de Procedimiento Administrativo Uniforme establece que: "[e]l procedimiento a seguir para los recursos de revisión será de acuerdo con lo establecido en el Reglamento del Tribunal de Apelaciones". *Íd.* La Regla 59 (E)(f) del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), requiere incluir en el apéndice del recurso: "[c]ualquier otro documento que forme parte del expediente original en la Agencia y que pueda ser útil al Tribunal de Apelaciones en la resolución de la controversia". La parte recurrente, no incluyó copia de la hoja de liquidación de sentencia actualizada, y copias de las sentencias que extingue, privándonos comprobar sus aseveraciones en torno al supuesto error cometido por la parte recurrida.

Reconocemos que, la Ley de la Judicatura de 2003, 4 LPRA sec. 24 *et. seq.*, persigue brindar acceso fácil, económico y efectivo a la ciudadanía al Tribunal de Apelaciones, así como permitir la

comparecencia efectiva de los litigantes por derecho propio. *Fraya, S.E. v. A.C.,* 162 DPR 182, 189-190 (2004); L. F. Estrella Martínez, *Acceso a la Justicia: Derecho Humano Fundamental,* San Juan, Ed. Situm, 2017, págs. 66-72. No obstante, el que la parte con interés comparezca por derecho propio, no le exime de cumplir con las normas que rigen la presentación de los recursos apelativos. En *Febles v. Romar Pool Construction,* 159 DPR 714, 722 (2003), el Tribunal Supremo dispuso que, "el hecho de que las partes comparezcan por derecho propio, por sí solo, no justifica que incumplan con las reglas procesales". Toda parte interesada, incluso la que comparece por derecho propio, debe cumplir con las disposiciones reglamentarias establecidas para la presentación eficaz de los recursos apelativos.

### *-IV-*

Por los fundamentos antes expuestos, los cuales hacemos formar parte de este dictamen, *confirmamos* el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones